A03A0017. BARRANCO v. WELCOME YEARS, INC.
(579 SE2d 866)

BLACKBURN, Presiding Judge.

Plaintiff/appellant Thomas J. Barranco appeals the trial court's grant of summary judgment to defendant/appellee Welcome Years, Inc. ("Welcome Years") and the denial of his motion for summary judgment. For the reasons set forth below, we reverse each ruling.

This case centers around conflicting interpretations of Welcome Years' obligations under a land sale contract (the "Contract") entered into by the parties. "The construction of a contract is a question of law for the court, and we apply a de novo standard of review on appeal." *Saturna v. Bickley Constr. Co.*[1]

On September 1, 1998, Barranco entered into the Contract to purchase 2.46 acres of land (the "Property") from Welcome Years. Under the Contract, Barranco had 90 days to inspect and test the Property, and the right, upon written notice, to terminate the Contract.

Barranco hired QORE Property Sciences f/k/a Atlanta Testing & Engineering ("QORE") to perform environmental site assessments of

---

[1] *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140 (555 SE2d 825) (2001).

the Property. On November 24, 1998, QORE informed Barranco that soil and groundwater tests at the Property revealed the release of regulated substances in the vicinity of diesel fuel underground storage tanks ("USTs"), an oil-water separator, and a former waste oil tank. QORE advised Barranco that such releases were regulated by the Georgia Environmental Protection Division ("EPD") and that the owner/operator of the Property would be required to report these releases and submit a corrective action plan to EPD. QORE recommended that Welcome Years, as current owner, take responsibility for removing USTs from the Property, obtaining "clean closure," and contacting the EPD to begin the regulatory process. QORE stated that it could carry out these remedial actions for Welcome Years at a cost of $52,900.

On March 26, 1999, Barranco and Welcome Years executed a Reinstatement and Third Amendment to Land Sale Contract (the "Third Amendment"). The Third Amendment reinstated the rights, duties, and obligations of the parties under the Contract, as amended, and increased the purchase price of the Property from $970,000 to $1,100,000. The Third Amendment also added a new Paragraph 8, titled Environmental Compliance and Remediation, and provided that the closing would be held ten days after Welcome Years complied with the terms of Paragraph 8.

Paragraph 8 (a) provided:

> Within thirty (30) days after the date of this Amendment, [Welcome Years] agrees (i) to notify the Georgia Environmental Protection Division ("EPD") of the presence of underground storage tanks ("USTs") at the Property and of any associated releases from these USTs, (ii) to properly close the USTs by removing them in accordance with the Georgia Underground Storage Tank Act ("GUSTA"), and regulations promulgated thereunder (the GUSTA regulations), (iii) to notify EPD and prepare a Corrective Action Plan Part A pursuant to the GUSTA regulations, (iv) to perform any additional investigative or remedial work required under GUSTA, the GUSTA regulations, or as required by the EPD, and (v) within ninety (90) days after the Date of this Amendment to obtain and forward to [Barranco] a no further action letter (or its equivalent) authored by EPD.

It is clear that Welcome Years has complied with Paragraph 8 (a) of the Contract, which required Welcome Years to take action in accordance with GUSTA and regulations promulgated thereunder. Welcome Years removed all USTs from the Property and, on August 4, 1999, through QORE, completed and submitted to EPD a closure

report form indicating that clean closure of the USTs had been obtained and that no further action should be required. By letter dated April 7, 2000, EPD notified Welcome Years that no further action was required with respect to releases associated with the USTs removed from the Property.

Barranco argues that Welcome Years breached Paragraph 8 (a), because it did not comply with its terms in a timely fashion. "It is well recognized that a party to a contract may waive contractual provisions for his benefit. Courts will readily seize upon any fact or circumstance growing out of the conduct of the parties, tending to show a waiver of strict compliance, and will seek to avoid the forfeiture and to leave the actual merits of the case open to investigation." (Punctuation omitted.) *Dept. of Transp. v. Dalton Paving & Constr.*[2] In light of the numerous extensions of time to comply with Paragraph 8 given Welcome Years by Barranco, we conclude that Barranco waived Welcome Years' strict compliance with the time deadlines set forth in Paragraph 8 (a).

Paragraph 8 (b), the interpretation of which is at issue in this case, provided:

> Within thirty (30) days after the date of this Amendment, [Welcome Years] agrees (i) to notify EPD under the Georgia Hazardous Site Response Act ("HSRA") of the presence of regulated substances at the Property above Notification Concentrations, as that term is defined under HSRA, and (ii) to perform any additional investigation, including, but not limited to, the completion of a Compliance Status Report, and any corresponding remediation, as required under HSRA, or any other applicable federal, state or local law, or as required by EPD, to the satisfaction of EPD as evidenced by a no further action letter (or its equivalent) authored by EPD and delivered to [Barranco] on or prior to the Closing date.

Unlike Paragraph 8 (a), Paragraph 8 (b) requires Welcome Years to take certain actions under HSRA rather than GUSTA. For this reason, as Barranco argues, under the amended Contract, Welcome Years had to demonstrate compliance under both GUSTA and HSRA and obtain two "no further action" letters — one related to GUSTA compliance and one related to HSRA compliance. While Welcome Years obtained the GUSTA letter as required by Paragraph 8 (a), it is clear from the record that Welcome Years has not complied with Par-

---

[2] *Dept. of Transp. v. Dalton Paving & Constr.*, 227 Ga. App. 207, 215-216 (3) (489 SE2d 329) (1997).

agraph 8 (b), because it has not performed any additional remediation as required by HSRA and secured a separate "no further action" letter from EPD showing compliance with HSRA.

Welcome Years contends that Paragraph 8 (b) cannot be construed so as to require it to complete the lengthy regulatory process under HSRA and obtain a "no further action" letter from EPD demonstrating compliance with HSRA. Welcome Years points out that it was required under Paragraph 8 (b) to perform all of its obligations under HSRA within 30 days of the date of the Third Amendment. Since the facts show that "in the 30-day period after execution of the Third Amendment, Welcome Years was not required by EPD or by any applicable law to perform any additional investigation, to submit a Compliance Status report, or to perform any remediation," Welcome Years performed all of its obligations under Paragraph 8 (b). Welcome Years also maintains that it had to obtain a separate "no further action" letter showing compliance with HSRA only if it was required to perform additional investigation or remediation within 30 days after execution of the Third Amendment.

> When it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties, where, from the language of the contract, the conduct of the parties, and all the attendant circumstances, it appears that the intention of the parties was that both should be bound by the sale, and substantial justice requires that the contract be given effect. The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction.

(Citations and punctuation omitted.) *Bridges v. Home Guano Co.*[3]

First, the plain language of Paragraph 8 (b) required Welcome Years to not only notify EPD of the presence of regulated substances at the Property, but also

> to perform any additional investigation, including, but not limited to, the completion of a Compliance Status Report, and any corresponding remediation, as required under HSRA, or any other applicable federal, state or local law, or as required by EPD, to the satisfaction of EPD as evidenced by a no further action letter (or its equivalent) authored by

---

[3] *Bridges v. Home Guano Co.*, 33 Ga. App. 305, 309 (125 SE 872) (1924).

EPD and delivered to [Barranco] on or prior to the Closing date.

There is nothing ambiguous about this language. "Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, no other construction is permissible." (Punctuation omitted.) *Copy Systems of Savannah v. Page.*[4]

It is well settled that "[t]he construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." *Scruggs v. Purvis.*[5] The acts and conduct of Barranco and Welcome Years also support our conclusion that the parties intended that Welcome Years could fulfill its obligations under Paragraph 8 (b) only after it had complied with the HSRA regulatory process and secured a "no further action" letter to that effect from EPD.

As noted above, Welcome Years submitted to EPD on August 4, 1999, a closure form indicating that clean closure of the USTs had been obtained and that no further action was required. Several months later, in a soil quality assessment report issued December 14, 1999, QORE informed Welcome Years that analysis of soil samples from the Property revealed the presence of lead at concentrations exceeding HSRA notification levels. QORE stated in the report that the known release could constitute a reportable quantity release and be included in the Hazardous Site Inventory ("HSI") for EPD-mandated corrective action for lead in the soil.

On January 31, 2000, Barranco informed Welcome Years, "without making an all-inclusive itemization of defaults," that it had defaulted under their agreement. Barranco stated that if Welcome Years did not comply with the agreement, it would be entitled to enforce the agreement by suit for specific performance.

On February 11, 2000, Welcome Years responded to Barranco's letter, disputing Barranco's contention that it was in default under the Contract and, at the same time, advising Barranco that it intended to: comply with its obligations under the Contract; remove all USTs from the property; perform the corresponding investigation and remediation of the tanks; and obtain a "no further action" letter from EPD. In response, Barranco, in a letter dated February 18, 2000, again asserted that Welcome Years had not complied with its obligations under Paragraph 8. Expressing particular concern about compliance with HSRA, Barranco demanded that Welcome Years submit to it a proposed schedule and plan of action with respect to its obligations under Paragraph 8, including: notification to EPD under

[4] *Copy Systems of Savannah v. Page*, 197 Ga. App. 435, 437 (398 SE2d 784) (1990).
[5] *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962).

HSRA; additional investigations and remediation as required under EPD, HSRA, or any other federal, state, or local law; and Welcome Years' "receipt from EPD of a 'no further action' letter related to both the USTs and any HSRA notification."

In a letter of March 8, 2000, Welcome Years again disputed that it had not complied with its obligations under the Contract. With regard to its obligations under HSRA, Welcome Years stated that it was complying with its obligation to report lead found on the Property, and that it was awaiting QORE's application for filing under HSRA. It also stated that, upon receipt of this application, it would submit the filing to the HSRA Division of the EPD as required by law. Welcome Years further informed Barranco that it had contacted representatives at the HSRA Division concerning the filing, that HSRA Division representatives were aware that the package would be filed, and that a HSRA Division representative had informed them that the review process would not be unduly delayed. Finally, Welcome Years said that it had complied with its obligation under the Contract by removing all USTs from the Property, performing the corresponding investigation and remediation of the tanks, and submitting an application for a "no further action" letter from the UST Division. This letter indicates that Welcome Years was aware that it had separate obligations to comply with the regulatory procedures promulgated under both GUSTA and HSRA.

On March 28, 2000, Welcome Years submitted to EPD's Hazardous Sites Response Program a Release Notification/Reporting Form and requested a "no further action" letter under HSRA for the Property. Since Welcome Years had already submitted an application for a "no further action" letter from the UST Division, its additional request for a "no further action" letter from the HSRA Division of EPD is acknowledgment of its obligation to secure a second and separate "no further action" letter evidencing its compliance with HSRA.

On April 18, 2000, Welcome Years forwarded to Barranco a copy of a determination letter from the EPD UST Division showing "no further action" status as to UST closures and corresponding remediation. Significantly, Welcome Years, having obtained the only "no further action" letter it now argues it was obligated to obtain, did not at this point request a closing.

Welcome Years also stated in this letter that it was "awaiting a response from the EPD-HSRA Division to [Welcome Years'] second filing." The second filing was the HSRA Release Notification/Reporting Form and its application for a "no further action" letter with respect to HSRA. Welcome Years also advised Barranco that it was "in contact with the compliance officer who is reviewing this report. He assured us that a determination is likely in early-mid May. As you are certainly aware, the EPD's review process is usually quite

prolonged." This letter, too, indicates that Welcome Years did not believe that its obligations under Paragraph 8 (b) had lapsed 30 days after the date of the Third Amendment, as they argue, but instead believed that its obligations would be discharged only after it had received the second "no further action" letter from the HSRA Division.

On September 18, 2000, EPD informed Welcome Years that it had determined that a release of a regulated substance exceeding a reportable quantity had been detected on the Property, and that the Property was now listed on the HSI. The HSI notification states that the EPD Director's determination regarding corrective action is pending.

In a letter of September 27, 2000, Welcome Years informed Barranco that EPD had placed the Property on the HSI but had not required Welcome Years to take any further action in accordance with the HSI listing; it requested that Barranco advise it as to whether he intended to proceed with the closing. It is at this point that Welcome Years, after learning that additional remediation of the Property might be required, changes its position regarding its contractual obligations.

Barranco responded that Welcome Years was mistaken in its assertion that no further action was required of it. Barranco pointed out that under EPD rules and regulations, Welcome Years was required to submit a Compliance Status Report ("CSR") to EPD for any property listed on the HSI. Upon EPD's review of the CSR and the accompanying certification filed by Welcome Years, EPD would either issue a "no further action" letter or require corrective action on the Property. Barranco repeated that Welcome Years was required under the Contract to deliver both a "no further action" letter under Paragraph 8 (b) and also an environmentally clean site to Barranco. To date, Barranco concluded, it had not received a "no further action" letter under Paragraph 8 (b), and, based on EPD's listing of the Property on the HSI, it appeared that EPD would not agree that the Property was environmentally clean. Finally, Barranco affirmed that once Welcome Years complied with its obligations under the Contract, it intended to close on the Property.

By letter dated October 24, 2000, Welcome Years informed Barranco that it had filed all reports required under the Contract and by EPD, and reiterated that EPD had not required any further action on its part pertaining to the HSI listing, and had not required any remediation of the Property at present. Welcome Years also stated: .

> When the Contract was entered into and amended, the presence of underground storage tanks and remediation made necessary by the presence of these tanks was a known con-

cern. Substantial funds were escrowed for the purpose of curing these environmental concerns, and the actual cost of remediation fell within engineering estimates and the expectations of the parties. The presence of lead on a remote corner of the Property, however, was not known or anticipated. Seller does not have liquid funds with which to pay for any additional remediation, and is therefore unable to take any remedial steps with regard to the presence of lead. Further, any efforts to compel Seller to do so would create an undue hardship, be inequitable, and contrary to the expectations of the parties when the Contract was entered into and amended.

Welcome Years went on to request that the sale of the Property be closed within ten days of Barranco's receipt of its letter or, in the alternative, that the Contract be terminated.

On November 6, 2000, Barranco indicated that he would not close as requested by Welcome Years, asserted that Welcome Years was in breach of the Contract due to a refusal to perform additional investigation and remediation of the Property "as required by the EPD," and threatened to file suit against Welcome Years unless it complied with its obligations. On November 9, 2000, Barranco filed the present action against Welcome Years claiming entitlement to specific performance of the Contract.

We find that the conduct of the parties, prior to the time Welcome Years learned that the Property had been placed on the HSI, demonstrates the parties' intention that Welcome Years be responsible for performing any additional remediation to the Property under HSRA and securing a "no further action" letter evidencing EPD's determination that the site was environmentally clean. The fact that EPD did not request additional remedial action from Welcome Years before EPD had an opportunity to review Welcome Years' HSRA filings and test the Property did not absolve Welcome Years of its obligations under Paragraph 8 (b) of the Contract. Welcome Years, which did not even initiate performance of its obligations under Paragraph 8 (b) until nearly a year after the signing of the Third Amendment, accepted the extensions of time as to all its obligations under Paragraph 8, and, before it learned that the Property had been placed on the HSI and that further remediation might be required before EPD issued a "no further action" letter, never maintained that those obligations had lapsed 30 days after the date of the Third Amendment.

It is clear that Welcome Years did not anticipate that lead would be discovered on the Property, that the Property would be put on the HSI, and that Welcome Years would be responsible for the expense of

remediation under HSRA. It is equally clear that this Court must enforce the Contract between the parties even though these circumstances were not anticipated by Welcome Years when it agreed to the Third Amendment. "Georgia law recognizes and protects the freedom of parties to contract. In general, parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain; they should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship." (Citation omitted.) *William J. Cooney, P.C. v. Rowland.*[6]

Finally, we find that the circumstances attending the Contract support our conclusion that Welcome Years did not fulfill its obligations under Paragraph 8 (b). We note that when the Contract was amended, the purchase price of the Property was increased by $130,000, from $970,000 to $1,100,000. As previously stated, the cost of remedial action which would bring the Property in compliance with GUSTA, as required by Paragraph 8 (a), was $52,900. As Welcome Years points out, substantial funds, well in excess of the $52,900 required for bringing the Property into compliance with GUSTA, were escrowed for the purpose of curing environmental concerns. It follows that the additional sum of more than $77,000 was intended by the parties to cover the cost of any additional remediation which might be required by Paragraph 8 (b) to bring the Property into compliance with HSRA.

The language of the Contract, the conduct of the parties, and the attendant circumstances convince us that Barranco and Welcome Years intended that Welcome Years bear responsibility for additional remedial action on the Property and obtaining a "no further action" letter from EPD indicating that the site was environmentally clean prior to closing. For this reason, the trial court erred in granting the motion for summary judgment of Welcome Years and denying that of Barranco.

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED MARCH 20, 2003 —

*King & Spalding, Steven S. Griffin, Robert B. Friedman*, for appellant.

*Vaughn, Wright & Stearns, Frederick L. Wright II*, for appellee.

---

[6] *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 705 (524 SE2d 730) (1999).