## A05A1370. BUFORD-CLAIRMONT COMPANY, LTD. v. RADIOSHACK CORPORATION.
(622 SE2d 14)

MILLER, Judge.

Buford-Clairmont Company, Ltd. (Buford-Clairmont) appeals from the final judgment in its declaratory judgment action against RadioShack Corporation (RadioShack), in which the trial court found that RadioShack was not in default under its lease agreement with Buford-Clairmont. We affirm for the reasons set forth below.

The record shows that Buford-Clairmont owned a shopping center in Clayton County. In 1988, RadioShack leased space in the shopping center for operation of a retail RadioShack store. In 1998, Buford-Clairmont and RadioShack extended the lease for a 47-month period. At that time, the parties also modified and amended the lease, adding a "product exclusivity" provision that prohibited the use of Buford-Clairmont-owned space in the shopping center for the "retail sale or display of electronic equipment and components." Pursuant to the lease amendment, if Buford-Clairmont failed to comply with the product-exclusivity provision then RadioShack could pay rent equal to the lesser of a fixed minimum rent or three percent of its gross sales per month.

In February 2002, Buford-Clairmont leased space in the shopping center to Sky Talk Communications, LLC, a company that sold cell phones. In a March 28, 2003 letter to Buford-Clairmont, RadioShack claimed that Buford-Clairmont had allowed electronic equipment and components to be sold in the shopping center in violation of RadioShack's right under the lease to be the exclusive seller of

electronic equipment and components. In the same letter, RadioShack asserted that it should be allowed to pay monthly rent equal to three percent of its gross sales. RadioShack began submitting rental checks based on a percentage of gross sales, and Buford-Clairmont returned the checks because it disputed RadioShack's calculation of the amount of rent due.

Buford-Clairmont filed a declaratory judgment action on May 30, 2003, seeking a declaration that RadioShack was in default under the terms of the lease and claiming damages for breach of contract. In June 2004, Buford-Clairmont amended its complaint to add a dispossessory action based on RadioShack's failure to pay common area maintenance charges, taxes, insurance, and waste disposal fees associated with the leased property.

The action proceeded to trial, where a jury, pursuant to two special interrogatories, found that Sky Talk Communications had used its shopping center space for the retail sale or display of electronic components, and that RadioShack had not waived its right to invoke the lease's exclusivity clause. Following the trial, the trial court entered its judgment on the remaining issues, concluding, among other things, that (i) RadioShack was not in default under the lease, (ii) the exclusivity clause was not an unenforceable restraint of trade, and (iii) Buford-Clairmont was not entitled to dispossess RadioShack. After these findings were incorporated in a final judgment, Buford-Clairmont appealed.

1. Buford-Clairmont claims that the lease's exclusivity clause is vague, overbroad, and an unreasonable and unenforceable restraint of trade, and that the trial court erred in failing to declare the provision invalid. We disagree.

"Restrictive covenants contained in leases are subject to the rules of contract construction." (Footnote omitted.) *Aldridge v. Overstreet*, 261 Ga. App. 821, 822 (584 SE2d 46) (2003). "The construction of a contract is a question of law for the court, and we apply a de novo standard of review on appeal." (Punctuation and footnote omitted.) *Coker v. Coker*, 265 Ga. App. 720, 721 (595 SE2d 556) (2004). Whether a contract is a reasonable partial restraint of trade is also a question of law for the court. See *Executive Town & Country Svcs. v. Young*, 258 Ga. 860, 863 (2) (376 SE2d 190) (1989).

> [A]n agreement by a lessor ancillary to a leasing of a part of his property, designed to prevent the use of the remainder of his property in a manner competitive with the operation of the lessee's business, is a valid and reasonable restraint of trade . . . subject to the overriding requirements that, as to territoriality and/or duration, they be reasonably necessary to protect the interests of the covenantee, that they not

impose greater restrictions upon the covenantor than are necessary for the covenantee's protection, and that they not unduly prejudice the interests of the public.

(Citations omitted.) *Webster v. Star Distrib. Co.*, 241 Ga. 270, 272 (a) (244 SE2d 826) (1978).

The lease's product exclusivity clause provides, in relevant part:

[Buford-Clairmont] covenants that during the Lease Term, no space within the Shopping Center (other than the Demised Premises) or any adjacent property owned by [Buford-Clairmont] shall be used for the retail sale or display of electronic equipment and components, including, but not limited to, all types of telecommunication and transmitting equipment, computers and related accessories, and audio/video equipment and accessories.

Buford-Clairmont claims that this covenant imposes greater restrictions than are necessary to protect RadioShack's legitimate business interests and unduly restricts the public's interest to shop freely for electronic items. We disagree. RadioShack's district manager averred that the RadioShack in the shopping center sold "electronics, such as audio/video equipment, computers and wireless phones." The exclusivity clause restricts the retail sale or display of "electronic equipment and components," including those items specifically referred to by the district manager. The exclusivity clause is tailored to directly correspond to RadioShack's business at the shopping center, and thus is not a greater restriction than necessary to protect RadioShack's interests. See *Market Place Shopping Center v. Basic Business Alternatives*, 213 Ga. App. 722, 722-723 (1) (445 SE2d 824) (1994) (where lessee operated a deli and lessor agreed to not lease space to another deli, lease's use of the term "deli" was not ambiguous, and lease restriction was not an invalid restraint on trade). Accordingly, the trial court did not err in failing to construe the exclusivity clause to be an impermissible restraint of trade.

2. Buford-Clairmont also contends the trial court erred by failing to construe the lease to find that all references to "Percentage Rent" were deleted. We disagree.

The lease amendment provides that RadioShack has no obligation to pay "Percentage Rent," and that other references to "Percentage Rent" were deemed to be deleted. Therefore, Buford-Clairmont argues, the parties deleted the provision in the lease amendment allowing RadioShack to pay a percentage of gross sales as rent if Buford-Clairmont failed to comply with the exclusivity clause.

Buford-Clairmont simply misreads the lease amendment. The term "Percentage Rent" is capitalized and refers to that term as used in the original lease. In the lease amendment, RadioShack's option to pay rent if Buford-Clairmont violated the exclusivity clause is expressed as "the lesser of (a) Fixed Minimum Rent, or (b) three percent (3%) of Gross Sales monthly," and the capitalized term "Percentage Rent" is not used. Thus, the plain language of the agreement makes clear that the parties did not intend to create and simultaneously delete RadioShack's rental obligation should Buford-Clairmont breach the exclusivity provision. "[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect." (Citation and footnote omitted.) *Sofran Peachtree City, LLC v. Peachtree City Holdings, LLC*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001).

3. Buford-Clairmont maintains that the trial court erred by refusing to hear and grant Buford-Clairmont's dispossessory claim before trial. Again, we disagree.

Buford-Clairmont contends that, notwithstanding the dispute over a breach of the exclusivity clause, RadioShack remained liable under the lease to pay common area maintenance, taxes, insurance, and sanitation fees, but failed to do so. Therefore, Buford-Clairmont argues, RadioShack was in default, and a trial was not necessary for the court to grant possession of the premises to Buford-Clairmont. The lease amendment, however, provides that RadioShack, upon a breach of the exclusivity clause, is authorized to pay a percentage of gross sales "in lieu of Fixed Minimum Rent *and all additional charges under the Lease* until the violation is cured." (Emphasis supplied.) Thus, even if we accept Buford-Clairmont's argument that taxes and maintenance and sanitation fees are not rent, these additional obligations would nevertheless constitute "additional charges under the Lease," payment of which is also excused. "Where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." (Citation and punctuation omitted.) *Race, Inc. v. Wade Leasing, Inc.*, 201 Ga. App. 340, 341 (1) (411 SE2d 56) (1991). The trial court correctly refused to dispossess RadioShack before resolution of the alleged exclusivity-clause violation.

4. Finally, Buford-Clairmont claims that the trial court erred by failing to give two requested jury charges. We disagree.

The first requested charge stated: "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." The second proposed charge provided: "that any ambiguity in [the] contract language must

be construed against the drafter of the lease." The trial court refused to give the charges, reasoning that they called on the jury to construe the lease.

"In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. 247, 250 (2) (b) (514 SE2d 922) (1999). Moreover, "[a] party cannot successfully complain about the refusal to give a requested charge unless they satisfy their burden of showing that the refusal was both erroneous and harmful." (Citation omitted.) *Carroll v. Pierce*, 221 Ga. App. 805 (1) (472 SE2d 560) (1996).

We conclude the trial court did not err in refusing to give the requested charges because the charges pertained to matters of contract construction and not to the factual questions before the jury. The appropriate questions before the jury were whether Sky Talk Communications used its shopping center space for the retail sale or display of electronic equipment and components, and whether RadioShack had waived its rights under the lease's exclusivity clause.

> The rules of law set forth in the Code with respect to the construction of contracts are framed for the guidance and direction of the courts. Except in cases where the meaning of obscurely written words is involved, and where there is evidence tending to show that the meaning of such words was differently understood in one way or another by the parties to the contract, it is improper for the court to give the jury any instruction with regard to the manner in which the contract should be construed.

(Citations and punctuation omitted.) *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986). Accordingly, the trial court did not err in failing to give the requested charges.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 28, 2005 —
RECONSIDERATION DENIED OCTOBER 13, 2005 — 

*Decker, Hallman, Barber & Briggs, Richard P. Decker, Stacy E. Hyken,* for appellant.

*Drew, Eckl & Farnham, Burke A. Noble, Bruce A. Taylor, Jr.,* for appellee.