## A07A2198. HIGHWOODS REALTY LIMITED PARTNERSHIP v. COMMUNITY LOANS OF AMERICA, INC.

(653 SE2d 807)

BLACKBURN, Presiding Judge.

In this action on a guaranty, landlord Highwoods Realty Limited Partnership ("Highwoods") appeals the summary judgment granted to Community Loans of America, Inc. ("CLA"), arguing that the trial court erred in concluding that CLA had not guaranteed the obligations of a new tenant who assumed the lease obligations of a prior tenant (CLA's subsidiary) and who later increased the term and rent obligations of the lease. We hold that CLA's guaranty obligations pertained only to the obligations of its subsidiary (the prior tenant), which obligations were undisputedly fulfilled; thus, we affirm the trial court's judgment.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that in April 1998, Highwoods and Tel-Link, LLC (a subsidiary of CLA), entered into an agreement for Tel-Link to lease certain space in a Highwoods commercial building. CLA[2] executed a guaranty of those obligations, which, after defining "Landlord" as Highwoods and "Tenant" as Tel-Link, provided that CLA did thereby "unconditionally guarantee to Landlord and its . . . assigns the full and prompt payment and performance of any and all obligations of Tenant to Landlord when due . . . under the Lease." The guaranty covered "all renewals, amendments, extensions, consolidations, and modifications of the Lease." In May 1999, Tel-Link and Highwoods amended the lease to reduce the rental rate and to extend the term to June 30, 2003.

In February 2000, Tel-Link sold its assets to NOW Communications, Inc. ("NOW"). With the consent of Highwoods, Tel-Link assigned the lease to NOW, with NOW assuming the obligations of tenant under the lease; however, Tel-Link remained obligated as an unreleased assignor to ensure its agreed-upon obligations under the lease were met through June 30, 2003. In a separate "Addendum to Unconditional Guaranty," CLA agreed that the assignment of the

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] CLA was formerly known as Title Loans of America, Inc., in which name it executed most of the referenced documents.

lease to NOW did not affect the validity of its guaranty; indeed, CLA reaffirmed its continuing obligations under the guaranty.

In May 2002, Highwoods and NOW agreed to a new rental rate and extended the lease through June 30, 2009. In March 2003, NOW filed for bankruptcy but nevertheless fulfilled all lease obligations through June 30, 2003 (the date through which Tel-Link was obligated as unreleased assignor). Highwoods demanded that CLA pay for NOW's post-June 30, 2003 rent obligations, but CLA defended that it had only promised to guarantee the lease obligations of Tel-Link, not the lease obligations of NOW.

Highwoods sued CLA to collect on NOW's unpaid obligations under the lease. Both Highwoods and CLA moved for summary judgment, claiming that the unambiguous agreements mandated judgment in their respective favors. The trial court granted CLA's motion and denied Highwoods's, giving rise to this appeal.

"Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo." *Chowhan v. Miller*.[3] We first decide whether the language is clear and unambiguous; if it is, we simply enforce the contract according to its clear terms, looking to the contract alone for its meaning. Id.

Here, CLA's guaranty is unambiguous. Defining "Tenant" as Tel-Link and "Landlord" as Highwoods, the guaranty provided that CLA did thereby "unconditionally guarantee to Landlord and its . . . assigns the full and prompt payment and performance of any and all obligations of Tenant to Landlord when due . . . under the Lease." Thus, CLA promised to make good on the lease obligations of Tel-Link to Highwoods; it did not agree to make good on the lease obligations of any assigns of Tel-Link. Indeed, when the parties intended to include assigns in a specified obligation, they did so: the guaranty made specific reference to Highwoods and its assigns as the beneficiaries of the guaranty, with no reference to assigns of Tel-Link as entities whose obligations CLA was guaranteeing.[4]

Highwoods argues that by consenting to the assignment of the lease to NOW and by executing the "Addendum to Unconditional Guaranty," CLA agreed to also guarantee the obligations of NOW under the lease. Highwoods reasons that otherwise there was no purpose to CLA reaffirming its obligations under the guaranty, as it

---

[3] *Chowhan v. Miller*, 283 Ga. App. 749, 750 (642 SE2d 428) (2007).

[4] This makes perfect sense, as it would be an unusual and risky business arrangement for a guarantor to guarantee the obligations of an unknown entity to whom the tenant might someday assign the lease, whereas promising to guarantee the obligations of one's subsidiary to a landlord (and the assigns of the landlord) seems more logical and natural.

was already obligated to fulfill those obligations without the reaffirmation. These arguments fail.

Nowhere in the "Addendum to Unconditional Guaranty" is there any language purporting to amend the guaranty to add NOW as an additional party whose obligations CLA was guaranteeing. To the contrary, in the operative language CLA simply

> reaffirms its continuing obligations as provided in the Guaranty and agrees that the execution of this Addendum and the Second Amendment to Lease Agreement [in which NOW also assumed the obligations of the lease] shall not in any way affect the validity and enforceability of the Guaranty or reduce, impair or discharge the obligations of Guarantor thereunder except as provided herein.

Because Tel-Link continued to be obligated as an unreleased assignor to fulfill its lease obligations through June 30, 2003, CLA was simply reaffirming that it would continue to guarantee those obligations of Tel-Link after the transfer of the lease to NOW. When assets change hands and leases are assigned, it is hardly surprising that a landlord would ask the guarantor of the original tenant to reassure the landlord that the guarantor was not going to raise the change of circumstances as a reason to back out of the guaranty obligations covering the original tenant; indeed, Highwoods's own senior vice-president used this rationale to explain why Highwoods approached CLA to "reaffirm" CLA's supposed guaranty of NOW's obligations when Highwoods was seeking to extend the term of its lease with NOW.

Highwoods maintains that because NOW became the "Tenant" under the terms of the original lease, NOW also became the "Tenant" as such was defined in the guaranty. Such logic is faulty, as each document separately defined this term for purposes of that particular agreement alone. "Tenant" under the original lease was defined to include Tel-Link's permitted assigns; "Tenant" under the guaranty was defined to include only Tel-Link. The operative language of the guaranty in fact set forth that CLA was guaranteeing, for the benefit of the Landlord *and its assigns*, all lease obligations of the Tenant (with no reference to the Tenant's assigns). Highwoods's attempt to expand the term by substituting one agreement's expansive definition of that term for the more restricted definition of that term in a separate agreement is without merit. Cf. *Buford-Clairmont Co. v.*

*RadioShack Corp.*[5] (court should give meaning to terms as defined in agreement). See also *Howell Mill/Collier Assoc. v. Gonzales*[6] (lease amendment substituting new tenant did not necessarily obligate guarantor to guarantee obligations of new tenant). This same concept prevents Highwoods from using the definition of "Tenant" in amendments to the lease to change the definition of "Tenant" in the guaranty.

Finally, Highwoods repeatedly points to the language of the guaranty that applied the guaranty to "all renewals, amendments, extensions, consolidations, and modifications of the Lease." This is irrelevant; NOW could modify the lease to extend for one hundred years at ever-increasing rental rates; however, the extension or rent modification of the lease would not diminish the fact that CLA only guaranteed the obligations of Tel-Link under the lease, not the obligations of subsequent assignees of Tel-Link. CLA guaranteed a specific entity's performance; it did not guarantee a document's performance.

"Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, no other construction is permissible." (Punctuation omitted.) *Barranco v. Welcome Years, Inc.*[7] Here, the guaranty and its addendum plainly bind CLA only to guarantee the lease obligations of Tel-Link, not the subsequent obligations of NOW. Accordingly, we affirm the court's grant of summary judgment to CLA and the court's denial of summary judgment to Highwoods.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED NOVEMBER 2, 2007.

*Timothy A. Baxter*, for appellant.

*Smith, Gambrell & Russell, Stephen M. Forte, Jason S. Bell, Colin Rhys Patrick Delaney*, for appellee.

---

[5] *Buford-Clairmont Co. v. RadioShack Corp.*, 275 Ga. App. 802, 805 (2) (622 SE2d 14) (2005).

[6] *Howell Mill/Collier Assoc. v. Gonzales*, 186 Ga. App. 909, 911 (2) (368 SE2d 831) (1988) (physical precedent only).

[7] *Barranco v. Welcome Years, Inc.*, 260 Ga. App. 456, 460 (579 SE2d 866) (2003).