A07A2269. VALUGYM, INC. et al. v. PTC PROPERTIES, INC.
(659 SE2d 700)

BERNES, Judge.

In this landlord/tenant dispute, the tenant, ValuGym, Inc.,[1] appeals from the trial court's denial of summary judgment in its favor and grant of summary judgment in favor of the landlord, PTC Properties, Inc. ValuGym argues that the trial court misconstrued certain language contained in the parties' commercial lease agreement (the "Lease") and erroneously concluded that ValuGym must pay PTC the rent that PTC claims to be owed. We agree with the trial court and affirm.

A grant of summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal, we conduct a de novo review of the record and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Highwoods Realty v. Community Loans of America*, 288 Ga. App. 226 (653 SE2d 807) (2007).

The facts of this case are undisputed. PTC is the owner of commercial property located in Peachtree City. In January 2004, PTC leased the property to ValuGym, which intended to operate a fitness center at that location. The initial term of the Lease was ten years. ValuGym was permitted to terminate the Lease if certain delineated conditions in the Lease's termination provision were satisfied. That provision reads as follows:

---

[1] ValuGym and PTC Properties were parties to the lease agreement at issue in this case. Subsequent to the execution of the lease, Better Bodies Fitness acquired all assets and liabilities of ValuGym and is therefore a named party in the appeal. We will refer to ValuGym and Better Bodies Fitness collectively as "ValuGym."

*Early Termination.* Landlord agrees that after this lease has been [in] effect for twelve (12) months, Tenant may terminate this Lease prior to its expiration should Tenant decide to close the fitness center in operation at the Premises. Should Tenant desire to exercise this option, Tenant shall give Landlord ninety (90) days prior written notice. Tenant shall be responsible for payment on a monthly basis of all rental and other payment obligations under this Lease during said ninety (90) day period and for a period of twelve (12) months thereafter, unless landlord enters a new lease for the Premises with a third party and receives monthly rental equal to or greater than that to be paid by Tenant under this Lease.

ValuGym eventually closed its facility and, in July 2004, ValuGym requested permission from PTC to sublease the property to the City of Peachtree City for use as a temporary library. PTC acquiesced to the sublease, provided that the City continue to comply with the terms of the Lease.

In January 2005, ValueGym's attorney sent a letter to PTC notifying it of ValuGym's intent to terminate the lease. In the letter, ValuGym recognized its obligation to give PTC 90 days notice prior to termination and to pay rent for an additional 12 months after the expiration of the 90-day notice period, or through March 2006. ValuGym continued to sublease the property to the City until November 5, 2005.

ValuGym paid PTC the agreed-upon monthly rental payments through March 2006, when payment ceased. PTC sought to recover additional rent for the time period spanning from March 2006 through November 2006, i.e., 12 months after the City vacated the property. ValuGym refused, contending that it had effectively terminated the Lease by its letter of January 2005 and had fully complied with the early termination provisions.[2]

PTC filed suit to recover the contested rent, plus late fees and interest. Both parties moved for summary judgment, contending that the unambiguous terms of the Lease demanded a verdict in their respective favor. The trial court granted PTC's motion and denied ValuGym's motion, and this appeal followed.

1. ValuGym argues that it successfully terminated the Lease 90 days after its January 2005 notice of termination letter, and that its

---

[2] The parties do not dispute that the remaining conditions of the early termination provision were satisfied, i.e., the Lease was in effect for more than 12 months, ValuGym closed the fitness center at the premises and provided written notice of termination, and PTC was unable to enter a new lease on the premises.

continued payment of rent through March 2006, or 12 months after the termination, satisfied the early termination provision in the Lease. ValuGym further asserts that a literal reading of the termination provision does not require that it, or its sublessee, vacate the property in order to achieve termination. Rather, ValuGym contends that, following its termination, the City became a holdover tenant under the following Lease provision:

> *Holding Over.* If Tenant remains in possession of the Premises after expiration of the term hereof or any extension of this Lease, with Landlord's acquiescence and without any express agreement of parties, Tenant shall be a tenant at will at the rental rate which is in effect at [the] end of the Lease. . . .

We agree with PTC that ValuGym could not have effectively terminated the Lease until the City, as ValuGym's sublessee, vacated the property.

> It is axiomatic that a contract should be construed by the court where the language is undisputed but the meaning of that language is in dispute. OCGA § 13-2-1. It is the responsibility of the court to determine whether an ambiguity exists. If the contract does not require disentanglement of the language by a jury, i.e., the words used are plain and clear in their common usage, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties.

(Citation and punctuation omitted.) *Enterprise Financial Corp. v. Ross White Enterprises*, 212 Ga. App. 318, 319 (1) (441 SE2d 805) (1994).

The plain language of the Lease makes clear that the parties intended for the early termination clause to be invoked in the event that ValuGym sought release from its obligations by "terminat[ing] this Lease prior to its expiration." The hold-over provision, on the other hand, was intended to govern the parties' conduct in the event that ValuGym "remain[ed] in possession of the Premises after expiration of the [ten-year] term."

Because ValuGym sought to terminate the Lease prior to its expiration, its conduct was governed by the early termination provision, and the hold-over provision did not apply. And, while ValuGym may have informed PTC of its *intent* to terminate the lease by its letter of January 2005, it did not achieve termination until it surrendered possession of the property to PTC. Cf. *Wig Fashions v. A-T-O*

*Properties*, 145 Ga. App. 325, 327 (243 SE2d 526) (1978). Indeed, "the effect of termination is a complete abrogation of the contract." (Citation omitted.) *Emanuel Tractor Sales v. Dept. of Transp.*, 257 Ga. App. 360, 366 (1) (b) (571 SE2d 150) (2002). It is therefore inconsistent for ValuGym to argue on the one hand that it terminated the Lease, but contend on the other that it continued to exercise dominion over the property by subleasing the premises to the City. By failing to act in a manner consistent with its intent to terminate the Lease, ValuGym waived its right to assert that the Lease automatically terminated following the 90-day notice period. Cf. *Aliabadi v. McCar Dev. Corp.*, 249 Ga. App. 309, 313 (2) (547 SE2d 607) (2001); *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (2) (547 SE2d 373) (2001). Consequently, the trial court did not err in granting summary judgment to PTC and in denying summary judgment to ValuGym.

2. Because of our holding in Division 1, we need not address ValuGym's remaining enumeration of error.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MARCH 13, 2008.

*Webb, Lindsey & Wade, Richard P. Lindsey, James H. Thompson*, for appellants.

*Mark D. Oldenburg*, for appellee.