# FIFTH DIVISION
## RICKMAN, C. J.,
## MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 22, 2021**

# In the Court of Appeals of Georgia

A21A1128, A21A1155. SAGE ATLANTA PROPERTIES, LTD. v. THE DINER GROUP OF GEORGIA, LLC et al.; and vice versa.

MCFADDEN, Presiding Judge.

Sage Atlanta Properties, Ltd., a landlord, filed this action to recover amounts due under a lease and two guaranties. After a bench trial, the trial court ruled that the guaranties signed by George Hawxhurst and Christopher Murphy did not survive the renewal of the lease. We agree with the landlord that under the plain terms of the guaranties, the guarantors are liable for rent under the lease renewal. So we reverse in Case No. A21A1128.

The guarantors, together with the tenant, The Diner Group, cross-appeal. They argue that the landlord's default judgment against another person—Tammi Duncan, who has been found, under the doctrine of apparent agency, to have renewed the

lease—bars it from pursuing the action against them. We disagree. We hold that the trial court did not err by vacating that default judgment and allowing the landlord to elect to pursue a remedy against the tenant and the guarantors. So we affirm in Case No. A21A1155.

1. *Proceedings below and on prior appeal.*

In a prior appearance of this case, in which we reviewed the grant of summary judgment to guarantor Hawxhurst, we held that the record, when viewed in favor of the landlord, showed the following:

> [O]n November 1, 2014, [the landlord] and [the tenant] entered into a 24-month lease of property to be used as a restaurant. [George] Hawxhurst and Christopher Murphy were guarantors for [the tenant] on the lease. The lease contained a provision for four two-year renewal options. On June 28, 2016, Tammi Duncan signed a notice of intent to exercise the option to renew and faxed the notice to [the landlord]. On the document, Duncan was identified as the owner/president of [the tenant]. Because she was not familiar with Duncan, [the landlord's] general counsel contacted the general counsel for [the tenant] and was informed that Duncan now owned Hawxhurst's shares in the company. Based on the explanation, [the landlord] accepted the renewal.
>
> During the renewal period, [the tenant] defaulted on the lease terms and [the landlord] filed a complaint for breach of lease and an action on a personal guaranty against [the tenant], Duncan, [and

2

guarantors] Hawxhurst, and Murphy. [The landlord] alleged that [the tenant] had breached the lease by failing to pay rent, taxes, late fees and other obligations under the lease, and that Hawxhurst and Murphy had personally guaranteed the performance of the lease obligations and thus [the landlord] was entitled to a judgment for those monies from the guarantors.

*Sage Atlanta Properties v. Hawxhurst*, 349 Ga. App. 758, 758-759 (824 SE2d 387) (2019) (footnote omitted). We reversed the grant of summary judgment to guarantor Hawxhurst on the issue of his liability under the guaranty. We held that there was "a genuine issue of material fact as to whether [the landlord was] entitled to relief under the doctrine of apparent agency," id. at 761, given that

[i]t [was] undisputed that [the landlord] undertook to ascertain Duncan's relationship with [the tenant] and was assured by a partner that she was also a partner with the group and had for the eleven months prior to the extension been involved in the operation and re-branding of the restaurant. And, it was only after receiving that assurance, and relying on Duncan's apparent partnership with [the tenant], that [the landlord] accepted the [lease] renewal.

Id. at 762. We noted that the lease documents provided that the "guarant[ies] shall continue in full force and effect during the term of the lease and for any renewal or

extension thereof, and shall not be affected by any modifications, changes, alterations or revisions to the lease." Id. at 758 n. 1 (punctuation omitted).

On remand, the trial court conducted a bench trial and entered an order on the issue of the tenant's and the guarantors' liability. Addressing the remanded issue, the trial court held that, based on the emails between the parties (the emails in which the landlord sought to ascertain Duncan's relationship with the tenant), Duncan had apparent authority to renew the lease on behalf of the tenant, and the landlord justifiably relied on that authority, so the renewal of the lease was effective and the lease was enforceable against the tenant.

The trial court nonetheless found that Hawxhurst and Murphy were not liable on the guaranties. The court found that the landlord was entitled to damages in the amount of $33,101.03 against the tenant and provided that the landlord had 30 days in which to elect either the award in that order or an award under the previously entered default judgment against Duncan.

The parties appealed again. The landlord appealed; the tenant and the guarantors cross-appealed. We dismissed those appeals. Because the trial court had given the landlord a period of time in which to elect its remedy, we held that,

4

"although the trial court entered default against Duncan and determined liability as to the remaining defendants, it ha[d] not yet entered final judgment."

Upon remand, the landlord elected to have the judgment against the tenant and in favor of the guarantors entered, so the court entered judgment for the landlord in the amount of $33,101.03 against the tenant only and vacated the default judgment against Duncan.

From this final judgment, the landlord filed this appeal and the tenant and the guarantors filed this cross-appeal.

2. *The guaranties apply to the renewal of the lease*.

The landlord argues that under the plain language of the guaranties, the guarantors are liable for the tenant's obligations under the renewal of the lease. We agree.

"Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo. We first decide whether the language is clear and unambiguous; if it is, we simply enforce the contract according to its clear terms, looking to the contract alone for its meaning." *Highwoods Realty Ltd. Partnership v. Community Loans of*

*America*, 288 Ga. App. 226, 227 (653 SE2d 807) (2007) (citations and punctuation omitted).

The identical guaranties provided in relevant part:

THIS GUARANTY SHALL CONTINUE IN FULL FORCE AND EFFECT DURING THE TERM OF THE LEASE AND FOR ANY RENEWAL OR EXTENSION THEREOF, AND SHALL NOT BE AFFECTED BY ANY MODIFICATIONS, CHANGES, ALTERATIONS OR REVISIONS TO THE LEASE.

The guaranties also provided that the landlord, "without notice to, without the consent of, and without affecting the liability of" the guarantors, could "modify, waive, supplement, or otherwise change any of the terms, conditions, provisions, restrictions or liabilities contained in the [l]ease." The guaranties also provided that they were "continuing" and that the guarantors waived "all defenses, legal or otherwise, available to the [g]uarantor[s], except payment in full of all amounts owed."

Under this clear and unambiguous language, the guarantors

consented in advance to any "[renewal or extension of the lease]" between lessor and lessee which may have been made and which if the guaranty were worded differently may have resulted in release of the guarantor[s]. In the case sub judice, the guarantor[s'] consent being contained in the guarant[ies] there is no release of the guarantor[s] for the reasons argued by defendant[s].

6

*Southeastern Hose v. Prudential Ins. Co.*, 167 Ga. App. 356, 357-358 (2) (306 SE2d 308) (1983) (holding that guarantor was liable for lease renewal since it consented in guaranty to "modifications, extensions, [and] amendments" of lease). See also *Dyna-Comp Corp. v. Selig Enterprises*, 143 Ga. App. 462, 463 (2) (238 SE2d 571) (1977) (modification of terms of lease, increasing square footage and monthly rental, did not release guarantor from liability for rent where the guaranty contained an express waiver consenting to extensions and modifications in advance). Cf. *LeCraw v. Atlanta Arts Alliance*, 126 Ga. App. 656, 658-660 (1) (191 SE2d 572) (1972) (guarantors could have been held responsible for additional lease term, as long as the additional term was secured in accordance with the provisions of the lease, but they were not liable because renewal was not secured in accordance with the provisions of the lease).

"A party may consent in advance to the conduct of future transactions and will not be heard to claim his own discharge upon the occurrence of that conduct. [The guaranties] bind[ ] [the guarantors] to the renewal of [the lease], and [they] cannot claim that the renewal discharged [them]." *Bank South v. Grizzle*, 218 Ga. App. 462 (2) (462 SE2d 170) (1995) (citation and punctuation omitted).

7

The guarantors and the tenant argue that, under the statute of frauds, renewals of guaranties such as theirs must be in writing. This case, however, does not involve renewals of the guaranties. Hawxhurst and Murphy agreed in advance—in writing—that the guaranties would "continue in full force and effect during the term of the lease and for any renewal. . . ." So their liability arises from the original guaranties, not from any renewal of the guaranties, and they do not argue that the original guaranties violate the statute of frauds.

The guarantors and the tenant argue that there is no evidence that Duncan had apparent authority to act for Hawxhurst or Murphy and thus to extend the guaranties on their behalf. But the question is not whether Duncan had authority to extend the guaranties, since the guaranties were not extended, but whether Duncan had apparent authority to renew the lease on behalf of the tenant. And the trial court found that she did. Hawxhurst and Murphy are liable because they already had agreed in writing that their guaranties continued in force during any renewal of the lease.

The guarantors and the tenant argue that the guarantors are not liable because the renewal of the lease amounted to a novation. "Any change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him." OCGA § 10-7-21. Here there was no novation because the

8

guarantors explicitly agreed that the guaranties would continue in full force and effect during any renewals of the lease and that the guaranties would not be affected by any modification, changes, alteration, or revisions to the lease. *Builders Development Corp. v. Hughes Supply*, 242 Ga. App. 244, 245 (529 SE2d 388) (2000) ("It is the unconsented-to change in potential risk that causes the discharge. The guarantor's liability is not extinguished where the change is done with his knowledge and consent."); *Underwood v. NationsBanc Real Estate Svcs.*, 221 Ga. App. 351, 352-353 (471 SE2d 291) (1996) (protections of novation can be waived by the guarantor's consent to the additional risk); *Anderton v. Certainteed Corp.*, 201 Ga. App. 538, 540 (1) (411 SE2d 558) (1991) ("[S]ince (the guarantors consented in advance to be responsible for just such [a lease renewal, they] cannot have been discharged as [guarantors] by its execution, even if under other circumstances such a [renewal] could be considered a novation.") (citation and punctuation omitted); *Southeastern Hose*, 167 Ga. App. at 357 (2) (declining to reach issue of novation, given language in guaranty agreeing to "modifications, extensions, [and] amendments" of lease).

3. *Default judgment*.

In the cross-appeal, the guarantors and the tenant argue that the trial court erred by vacating a final judgment—the default judgment entered against Duncan—outside

9

the term of court in which it had been entered. And because that judgment stands, they argue, the landlord is barred from pursuing an inconsistent remedy against them. This argument rests on the faulty premise that the judgment against Duncan was a final judgment that could not be vacated.

"In a case involving multiple parties or multiple claims, a decision adjudicating fewer than all the claims or the rights and liabilities of [fewer] than all the parties is not a final judgment." *Johnson v. Hospital Corp. of America*, 192 Ga. App. 628, 629 (385 SE2d 731) (1989) (punctuation omitted). See also OCGA § 5-6-34 (a) (1) (defining a final judgment as one "where the case is no longer pending in the court below. . . ."). Indeed, in the order granting judgment against Duncan, the trial court expressly ruled that "[t]he entry of [the] judgment [was] NOT a final order [and that] the matter [would] remain pending as it relate[d] to the other co-defendants." And we dismissed the prior appeal from the order deciding the tenant's and the guarantors' liability because it was not a final judgment, as the case was pending below.

> While final judgments may not be modified after the term in which they were rendered, an interlocutory ruling does not pass from the control of the court at the end of the term if the cause remains pending. Such rulings are subject to revision at any time before final judgment unless the court issues an order upon express direction under OCGA § 9-11-54 (b).

10

*Rogers v. Deutsche Bank Nat. Trust Co.*, 343 Ga. App. 655, 657 (2) (a) (808 SE2d 233) (2017) (citation and punctuation omitted). Because the default judgment against Duncan was not a final judgment, the trial court still controlled it and had the authority to vacate it upon the landlord's election of its remedy.

The guarantors and the tenant also argue that the landlord's contentions regarding Duncan preclude recovery against them. They make two related arguments.

The first is that the landlord is pursuing inconsistent remedies: that its claim against the guarantors and the tenant for breach of the renewed lease is inconsistent with the representation it made to obtain a default judgment against Duncan. The landlord contended, in support of its claim against the guarantors and the tenant, that Duncan had authority to renew the lease. But in order to obtain a default judgment against Duncan, the landlord represented that Duncan was *not* so authorized and therefore that she is personally liable to the landlord. The second, related argument is that because of that inconsistency, the landlord is judicially estopped from seeking a judgment against them. We disagree with both positions.

As detailed above, before entering the final judgment, the trial court granted the landlord the opportunity to elect its remedy. Once the landlord elected its remedy, the trial court vacated the default judgment against Duncan and entered final

judgment. So the landlord has not obtained inconsistent remedies. See OCGA § 9-2-4 ("A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them."); *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 842 (1) (e) (752 SE2d 18) (2013) ("any election of remedies, if necessary, [can] be made before judgment"); *UIV Corp. v. Oswald*, 139 Ga. App. 697, 699 (229 SE2d 512) (1976) ("[W]hile the claimant . . . is not required to make an election between inconsistent remedies prior to the verdict, he must make, and be given the opportunity to make, an election prior to the formulation and entry of judgment."). See also *Liberty Nat. Bank & Trust Co. v. Diamond*, 231 Ga. 321, 324-325 (III) (201 SE2d 400) (1973) (plaintiff elected her remedy when she obtained a *final* judgment on one of her inconsistent claims).

Moreover, "the default judgment against [Duncan] did not reach the merits of the claim . . . . The default judgment merely determined that [Duncan] failed to follow the procedural requirement that a timely answer be filed." *Fred Chenoweth Equip. Co. v. Oculus Corp.*, 254 Ga. 321, 323 (328 SE2d 539) (1985). Thus the default judgment does not demonstrate that the landlord successfully persuaded the trial court to accept a particular position with regard to the merits of its claim against Duncan,

12

and judicial estoppel does not apply. See generally *Joyner v. Leaphart*, 358 Ga. App. 383, 386-387 (5) (853 SE2d 407) (2021).

*Judgment reversed in Case No. A21A1128. Judgment affirmed in Case No. A21A1155. Senior Appellate Judge Herbert E. Phipps concurs. C. J. Rickman concurs in judgment only.*